Peck, J.,
delivered tlie opinion of the Court.
Arabella Riley, the executrix and widow of the late Brigadier General Bennett Riley, complains that the estate of the decedent has been *300 injured by the action of the accounting officers of the Treasury Department, under the following act, approved February 5, 1853:
Chapter LVIII. — AN ACT for the relief of Brigadier General Bennett Riley, and to enable him to settle his accounts with the United States.
Be it enacted, &c., That the provisions of the act approved the third of March, eighteen hundred and forty-nine, entitled “An act to provide for the settlement of the accounts of public officers and others who may have received moneys arising from military contributions, or otherwise, in Mexico, be, and they are hereby, applied to Brevet Brigadier General Bennett Riley in reference to all moneys raised and collected by him for contributions, penalties, internal assessments, duties, or other objects, in California, from the commencement of the late war with Mexico to the twelfth day of November, eighteen hundred and forty - nine, and the said Riley shall account for, settle, and pay into the treasury of the United States, for general purposes, any balance of moneys shown to be in his hands upon such settlement; and all papers, vouchers, and other documents connected with the levying and collecting of any money as aforesaid shall be filed with the accounts rendered for settlement by the said Riley.
Sec. 2. And be it further enacted, That in settling the accounts of said Riley as aforesaid, the accounting officers of the treasury be and they are authorized and required to credit him with any sum or sums of money paid or advanced by him for defraying the expenses of the convention of California called to frame a Slate constitution, and also the sum or sums of money advanced by him for the relief of destitute overland emigrants to California; and such credits shall be allowed only on the production of proper vouchers, in such form as may be approved by the Secretary of the Treasury of the United States; and the said officers of the treasury shall, in said settlement, further credit the said Riley with all sums of money expended by him for the support of the actual government of California, after the ratification of the treaty of peace with Mexico, and before the formation of the State government, and which expenses may appear to have been proper and necessary, but not authorized by any law of the United States : Provided, That, before crediting him the said last-mentioned expenditures, they shall be approved by the President of the United States.
Sec. 3. And be it further enacted, That as a compensation for collecting, safe-keeping, and disbursing the said moneys, the said Riley shall be allowed and credited on such settlement one and a half per cent, upon the moneys so raised and collected by him, and he shall be allowed no other or further compensation therefor.
*301 Sec. 4. And be it further enacted, That the Secretary of the Treasury be, and he is hereby, directed to cause proper defence to be made at the expense of the United States to any suit or suits now pending, or that hereafter may be instituted against the said Riley for any moneys raised and collected by him in California, and to which this act is applicable.
The complaint is, that several items of expenditure for defraying the expenses of the convention of California were wholly, or in part, rejected by the Third Auditor in settling the accounts; also, that the money retained by General Riley as acting governor of California from the 13th of April to the 20th of December, 1849, at the rate of ten thousand dollars per annum, was disallowed.
The second section of the act makes provisions for three distinct classes of expenditure: First, for defraying the expenses of the convention; second, for money advanced for the relief of destitute overland emigrants; third, for money expended for the support of the actual government of California. The first two classes of expenditure were to be allowed on the production of proper vouchers in such form as the Secretary of the Treasury should approve. The necessity or propriety of the advances covered by the vouchers was not open to discussion; these were prejudged by Congress and determined by it. The expenditures in the third class were such as might appear to have been “ proper and necessary,” and before these could be credited they required the approval of the President, who was to judge of tlieir propriety and necessity.
It appears that the money expended in support of the convention was not paid out by General Riley in person, but by a military officer, under the usual safeguards that attend military disbursements, and some of it upon vouchers certified by the president of the convention and others than General Riley, which, in connection with his meritorious efforts to establish the State, probably furnished reasons to Congress for relieving him from the responsibility of explaining the propriety of these expenditures.
The adjustment of the accounts embraced in the second and third classes, with the exception of the allowance claimed as civil governor, is acquiesced in. We shall notice only those of the first class, which were objected to by the accounting officer.
General Riley was credited with the sum of $14,197 03 as his commissions for collecting, disbursing, and safe-keeping of money, as authorized by the third section of the act, from which was deducted *302 the sum of $9,798 47 by reason of disallowances. The difference between these sums was paid to the executrix, who now seeks to recover the difference which was withheld.
The items rejected by the accounting officers and not specially noticed were mostly for the expenses of the civil government, and were rejected because of errors of computation, extension, double payment, and want of voucher; except in the latter case, where a sum of three hundred dollars was not covered by a voucher, the amounts were inconsiderable, and were not for the support of the convention.
Of the principal items rejected by the accounting officers, we have to remark, that the sums were advanced and paid for defraying the expenses of the convention of California; and, whether wisely or unwisely, or whether properly or necessarily, they were, to that extent at least, beyond the revision of those officers who had been relieved by Congress from all control, as well as from all discretion in that regard.
A voucher for $1,000, covering a charge for transportation of delegates, was disallowed, because, the officer says, it is believed the delegates were subsequently paid mileage. This is an inference, as he states, from other vouchers ; it is not pretended that there is any evidence of the payment of mileage. An inference is not deemed a sufficient ground for rejecting a voucher which Congress had directed to bo credited. ;
The deductions of $775 from each of the vouchers, in the names of J. S. Houston and E. P. Kennedy, are improper. The rate per clay allowed these individuals, the accounting officer says, appears to be “ unreasonably high” in the one case, and “too high” in the other; therefore, he arbitrarily reduces the amounts. His judgment, or opinion, is not the test which the act prescribes; that only requires evidence of the expenditure, not of its propriety.
Caleb Lyon acted as secretary of the California convention; a voucher signed by him is produced, from which it aq>pears that he was allowed for a day’s service not rendered, and twenty-three dollars was consequently deducted from the amount which should otherwise have been granted the estate. The voucher upon which the money was paid was certified by the president of the convention as being “just and true, and authorized by the convention,” which, we think, brought the whole sum expressed in the voucher within the purview of the act. We have already stated that we do not think it was designed that General Riley should he called upon to justify the expenditures made in support of *303 tbe convention, nor to respond for tbe mistakes of its officers; he had acted in the best of faith, and under the influence of the highest motives, without imputation of selfishness, and he is entitled to the largest protection, under the auspices of an act expressly designed for his relief.
The only other voucher which we shall comment upon is that for the salary of General Riley, as governor of California. The record is bare of proof upon this topic. There is no averment in relation to it in the petition; and but for a reference by it to the vouchers and the correspondence of the Secretaries of the Treasury, we should not know that General Riley had ever acted as governor, even for an hour ; and, as it is, we have no good proof of any period of service by him in that capacity. Counsel have not deigned to inform us in any manner as to this fact. We have of ourselves had recourse to the public acts and records of the country for information, and from an examination of these we ascertain that General Riley, by the California convention, was continued as “acting executive,” by a resolution adopted the last day of its session, at the pay of $10,000 per annum. The constitution framed by the convention fixed this amount as the annual salary of the governors to be elected under it, and also, in terms, recognized the “acting executive” of the prospective State, and required that “executive” to exercise several important functions in aid of its ultimate adoption.
The subsequent ratification of the proceedings of the convention by Congress, whereby California was brought into the Union, resulted to the benefit of General Riley, and justifies us in making his estate an allowance for his services as governor, as part of the expenses incident to the convention, from the date of his recognition in that capacity by the convention — that is, from the 13th of October, 1849, to the 20th of December,- the day of the date of the proclamation by General Riley declaring the constitution of California operative in proper vigor.
This allowance will amount to the sum of $1,852 52.
The voucher for $1,000, improperly rejected, and the two deductions of $775 from each of the vouchors of Houston and Kennedy, together with the twenty-three dollars deducted from the compensation paid Lyon, we shall allow.
The sum for which we authorize a judgment in favor of the executrix is $4,425 52.
*304 Loring, J.,
delivered the following opinion :
I think the historical part of this case is correctly stated in the brief for the petitioner, and its result is that from April 13, 1849, to December 20, 1849, General Riley was the civil governor of California under the authority of the United States, and no other; and I think no intervention with that authority, for the time specified, was made or attempted by the convention or constitution of California, or adopted or recognized by the United States. And however that may be, I think all the law of this case begins and ends with the statute of 1853, chapter 58. It is entitled “An act for the relief of Brevet Brigadier General Riley, and to enable him to settle his accounts with the United States.” It is a private as well as a public act, and is so classed in the statute-book, 10 U. S. L., pp. 154, 751. As a private act it makes a contract between the parties, involving their assent and binding them mutually to its terms; these embrace all the accounts between the parties, and all claims of General Riley against the United States, and therefore include his claim for salary as civil governor of California. General Riley accepted the act, and claimed and received under it $14,197 03 as its commission of one and a half per cent, on moneys collected and disbursed by him. By thus taking its benefits he submitted to its conditions, and one of these is that the credits for his expenditures in support of the actual government of California shall be approved by the President. The record does not show that the President approved, but it shows that he disapproved, of the credit claimed by General Riley as salary as civil governor of California, and therefore I think it cannot be allowed. Its amount is $6,904 10.
The petitioner claims several small sums, amounting to $21 77, which she says were actually paid and were disallowed at the departments as over-payments by mistakes in calculation shown on the face of the vouchers. But the burden of proof as to moneys paid is on General Riley, and the vouchers are his evidence, and the only evidence in the record, and he can claim only what they prove, and a miscalculation is not evidence of the payment of the sum it produces. I think the sum of $21 77 should not be allowed.
The petitioner claims $300 on the ground that this amount was improperly disallowed at the department on a claim for $1,216, as paid by Major Allen to Mr. Sutter. But the voucher produced by General Riley for the payment of $1,216 is the receipt of Mr. Sutter for $900; that is evidence for nothing more than it specifies, and there is no evidence of any further payment on the claim of $1,216. I think the -$300 should not be allowed.
Mr. Caleb Cushing and Mr. J. D. McPherson for claimants.
Mr. J. J. Weed, Assistant Solicitor, and Mr. J. B. Kerr, Deputy Solicitor, for the government.
Tlie petitioner claims to be allowed for $23 paid to Caleb Lyon. It is admitted that this is a double payment, but it is claimed that the statute in directing that General Riley should be credited with “ any sums of money paid or advanced,” &e., intended to'relieve disbursing officers from “the consequences of errors.” But I do not think the statute intended to shield such officers against their own, carelessness, or that gross inattention to papers and vouchers in their hands or control which is implied in double payment for the same thing. I think the $23 should not be allowed.
1 concur with the majority of the court that General Riley should be credited with the $1,000 paid for the transportation of delegates, and $1,550 paid for distributing copies of the constitution of California; and 1 think he is entitled to judgment for these two sums, amounting; 'to $2,550.